IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANITRA M. PARKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05-01150-CV-W-JTM |
| ) | |
| MISSOURI DEPARTMENT OF SOCIAL ) | |
| SERVICES, DIVISION OF CHILD SUPPORT, ) | |
| ) | |
| Defendant. ) | |

# ORDER

On September 2, 2004, plaintiff Anitra M. Parks ("Parks") was terminated by her employer of four years, the Missouri Department of Social Services, Division of Child Support Enforcement ("the Department"), the defendant herein. Subsequently, after unsuccessfully pursuing administrative relief, Parks filed the present action in federal court pursuant to Title VII of the Civil Rights Act of 1964. In this case, Parks alleges that she was subjected to race discrimination and illegal retaliation beginning in early 2003 after she was transferred to the Department's offices located on East Armour Boulevard in Kansas City, Missouri ("the Armour office"). In her FIRST AMENDED COMPLAINT [Doc. 39], Parks alleges that the Department violated Title VII with regard to discipline[1] she received up to and including her eventual termination.

---

[1] The FIRST AMENDED COMPLAINT makes mention of "harassment" directed at Parks. However, in the dispositive motions before the Court, neither party addresses a claim for either racial harassment or retaliatory harassment, instead merely focusing on discrete acts of discipline. Consequently, the Court will assume that Parks is not pursuing any harassment claims. In any event, there is not legally sufficient evidence to create a triable issue on harassment inasmuch as there is no evidence that any actions by the Department materially and adversely affected the terms and conditions of Parks' employment.

1

Presently pending before the Court is the Department's MOTION FOR SUMMARY JUDGMENT [Doc. 44]. For the reasons set out briefly below, the Court grants the MOTION FOR SUMMARY JUDGMENT.

The parties are seemingly in agreement that there is no direct evidence of either racial discrimination or illegal retaliation; instead, Parks points to circumstantial evidence to establish her claims. As such, the summary judgment analysis for both claims is derived from the seminal Supreme Court decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). Under the *McDonnell Douglas* framework, Parks is required initially to establish a *prima facie* case of race discrimination and retaliation. *See*, *e.g.*, *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). If Parks sustains that burden, it is then incumbent on the Department to come forward and advance legitimate, non-discriminatory reasons for its disputed adverse actions taken with regard to Parks (*i.e.*, the discipline and eventual termination). *See*, *e.g.*, *Williams v. Saint Luke's – Shawnee Mission Health System, Inc.*, 276 F.3d 1057, 1059 (8th Cir. 2002). At the third stage of the *McDonnell Douglas* analysis, once the Department articulates such reasons, the presumption of discrimination and/or retaliation disappears entirely and Parks squarely bears the burden of proving:

> by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination [and/or retaliation]. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 136, 120 S.Ct. 2097, 2106 (2000) (*citations omitted*).

With regard to the first step in the *McDonnell Douglas* analysis, in the Eighth Circuit, to establish the bare minimum Title VII *prima facie* showing of race discrimination, a plaintiff must show:

> (1) she was a member of a protected group;
>
> (2) she was performing her job at a level that met her employer's legitimate expectations;
>
> (3) she suffered an adverse employment action; and
>
> (4) there are facts that permit an initial inference of race and/or gender discrimination.

*Taylor v. Southwestern Bell Telephone Co.*, 251 F3d 735, 740 (8th Cir. 2001). Similarly, to establish a *prima facie* case of retaliation under Title VII, a plaintiff must show:

> (1) she engaged in activity that is protected under Title VII;
>
> (2) an adverse employment action was taken against her; and
>
> (3) a causal connection between the two events.

*Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc*). For purposes of ruling on the current MOTION FOR SUMMARY JUDGMENT, the Court will assume that Parks can and has established *prima facie* cases of race discrimination and retaliation.[2]

---

[2] In truth, this may be a large assumption on the Court's part. The Department presents considerable evidence that Parks was not meeting the expectations of her employer and, in many instances of "discipline," was not subjected to an "adverse employment action". However, this Court is mindful of the Eighth Circuit's repeated admonition that the showing required to establish a *prima facie* case is "minimal." *See*, *e.g.*, *Erickson v. Farmland Industries, Inc.*, 271 F.3d 718, 726 (8th Cir. 2001) ("the *prima facie* case requires only a minimal showing, while a showing of pretext requires more substantial evidence"). In light of the Court's conclusion regarding an absence of meaningful pretext evidence, it seems prudent to simply advance directly to that dispositive issue.

3

Moreover, Parks does not raise any serious or substantive issue to suggest that the Department has failed to articulate legitimate, nondiscriminatory reasons for its discipline and eventual termination of Parks. To the extent, there are issues in that regard, the Court finds that the Department's stated reasons[3] satisfy the second prong of *McDonnell Douglas*. As such, the Court will focus its attention on the third prong of the *McDonnell Douglas* test, to wit: whether Parks has come forward with significant probative evidence of pretext. On this issue, the Court finds Parks' evidence lacking.

In PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, Parks generally alleges:

> Parks and Black employees generally were treated disparately and held to a standard that was not applied to the white employees in the Armour office. As pointed out, ample evidence supports this position.

Unfortunately, the ample evidence has not been presented to the Court. Attached to Parks' pleading are four exhibits, none of which meet her evidentiary burden on pretext.[4]

---

[3] According to the Department, Parks received written reprimands, poor performance evaluations, a corrective action plan, and ultimately termination for excessive tardiness, unauthorized absences from work, poor job performance (not doing necessary filing), insubordination, and misplacing client documents. *See*, *e.g.*, *Roark v. City of Hazen, Arkansas*, 189 F.3d 758, 761 (8th Cir. 1999) (insubordination is a legitimate nondiscriminatory reason for reprimanding an employee); *Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (management's good faith belief that an employee has lied – even if such belief is mistaken – constitutes a nondiscriminatory rationale for imposing discipline); *Moschetti v. Chicago, Central & Pacific Railroad Co.*, 119 F.3d 707, 709-10 (8th Cir. 1997) (employer's conclusion that an employee should be disciplined for poor work performance is a legitimate, nondiscriminatory reason); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316-17 (8th Cir.1996) (employee's excessive absenteeism is a legitimate, nondiscriminatory reason for taking an adverse employment action). These reasons are all facially legitimate, nondiscriminatory reasons for a business to discipline an employee.

[4] Parks primarily cites to these exhibits without any reference to a specific citation. A litigant should not expect a court to wade through lengthy exhibits in search of the proverbial needle in the haystack that will support the litigant's point. Nonetheless, in this case, the Court has reviewed the attached exhibits *in toto* and is satisfied that Parks cannot meet her burden.

4

The first exhibit is a largely self-serving affidavit from Parks herself containing vague allegations of disparate treatment. The second, third and fourth exhibits include excerpts from the depositions of Cindy Saltzmann, Bridgett Taylor, and Michelle Sudduth, respectively. Each of these women generally testify that there was a "feeling" that blacks were not treated equally at the Armour office, but none of the deposition testimony provided to the Court is legally sufficient to create a trialworthy issue on pretext.

In resisting a well-founded motion for summary judgment, Parks "must do more than simply create a factual dispute as to the issue of pretext; [she] must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Matthews v. Trilogy Communications, Inc.,* 143 F.3d 1160, 1165 (8th Cir. 1998). To that end, Parks cannot avoid summary judgment by merely arguing that she or others merely "think" or "believe" or "feel" that race discrimination and/or retaliation were the real motivations underlying the decisions to mete out discipline to her. *Grimes v. USPS*, 872 F.Supp. 668, 673 (W.D. Mo. 1994), *aff'd*, 74 F.3d 1243 (8th Cir. 1996). Ultimately, Parks has come forward with no "significant probative evidence" indicating that the reasons put forward by the Department for disciplining her were mere cover to hide race discrimination and illegal retaliation.[5] *See generally Buettner v. Arch Coal Sales, Inc.*, 216 F.3d 707, 718 (8th Cir. 2000) ("A plaintiff facing a summary judgment motion cannot get to a jury without any significant probative evidence tending to support the complaint.").

---

[5] Mere assertions that [an employer] had discriminatory motive and intent . . . are inadequate, <u>without substantial factual evidence</u>, to raise . . . a genuine issue of material fact as to pretext in order to avoid summary judgment.

*Evans v. Runyon*, 965 F. Supp. 1388, 1389-90 (C.D. Cal. 1997) (*emphasis added*).

Furthermore, throughout the exhibits to her summary judgment pleadings filed with the Court, Parks and other witnesses vaguely suggest that other Department employees were treated more favorably than Parks. However, Parks produces no significant or meaningful details about these other situations and does not offer any information about the disciplinary history of these other employees. While similarly situated employees potentially can form a basis for establishing pretext, Title VII law is well-settled that in order for such assertions to have any evidentiary value, the similarly situated employees must be "similarly situated in all relevant respects." *Ghane v. West*, 148 F.3d 979, 982 (8th Cir. 1998); *see also Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir.1994) (plaintiffs have the burden to show that they are similarly situated in all relevant respects to the individuals who were treated more favorably). As the Eighth Circuit noted in another Title VII case:

> The [complaining employee] has the burden of demonstrating that there were individuals similarly situated in all respects. Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.

*Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir.2000). In this case, Parks' multiple and progressive disciplines makes its very unlikely that any employee can be viewed as similarly situated to Parks. *See*, *e.g.*, *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003) ("other individuals are not similarly situated because [the plaintiff] did not establish that the circumstances of their misconduct was comparable in severity or frequency to [her] infractions").

6

Finally, overriding the Court's conclusions is a recognition that, with regard to the determinations made by the Department as to how to discipline its employees, the law is clear that "employers have wide latitude to make business decisions." *Lacroix v. Sears, Roebuck and Co.*, 240 F.3d 688, 692 (8th Cir. 2001); *see also Dorsey v. Pinnacle Automat. Co.*, 278 F.3d 830, 837 (8th Cir. 2002) (federal courts "do not sit as super-personnel departments to second-guess the business decisions of employers [rather] the threshold question is . . . whether [the employer's] reasons for its employment actions are true, not if they are wise, fair, or correct"). When an employer articulates a reason for disciplining a particular employee, it is not the court's "province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). Thus, in this case, any "argu[ment] that the infractions were not serious enough to warrant a discharge [or other adverse action] . . . merely questions the soundness of defendant's judgment," and does not demonstrate pretext for discrimination. *Davenport v. Riverview Gardens School District*, 30 F.3d 940, 945 (8th Cir. 1994); *see also Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 725 (8th Cir. 1984) ("While an employer's judgment may seem poor to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination."). In the absence of significant probative evidence to support a claim of pretext hiding race discrimination and/or illegal retaliation, the Court will not second-guess the decisions made by the Department in meting out discipline (ultimately including termination) to Parks.

For the foregoing reasons, it is

7

**ORDERED** that the DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, filed September 8, 2006 [Doc. 44] is **GRANTED**. Accordingly, summary judgment is entered in favor of defendant and against plaintiff on all claims.

        */s/ John T. Maughmer*
        **John T. Maughmer**
     **United States Magistrate Judge**